**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JOSHUA CLEAVELAND, | ) | 3:23-cv-1298 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HOME DEPOT USA INC., *et al.*, | ) | |
| *Defendants*. | ) | June 10, 2025 |

### RULING ON DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY AND MOTION FOR SUMMARY JUDGMENT

Sarala V. Nagala, United States District Judge.

In this products liability action, Plaintiff Joshua Cleaveland sued Defendants Tricam Industries, Inc. and Home Depot USA Inc. after he fell from a Tricam model GLX-5B ladder[1] on August 26, 2021. The ladder was manufactured by Tricam and purchased from Home Depot. According to Plaintiff, he was injured because the ladder was defective.

Plaintiff brought claims pursuant to the Connecticut Product Liability Act ("CPLA"), Conn. Gen. Stat. § 52-572(n), *et seq.*, against Defendants for manufacturing defect, design defect, failure to warn, breach of express warranties, breach of implied warranty of merchantability, and punitive damages. Defendants have moved to exclude the testimony of Plaintiff's expert, Dr. Jonathan Slocum, ECF No. 38, and for summary judgment on all of Plaintiff's claims, ECF No. 39. For the reasons set forth below, the Court GRANTS both Defendants' motion to exclude and their motion for summary judgment.

---

[1] Defendants refer to the ladder as a "Tricam" ladder, but Plaintiff and his expert refer to the ladder as a "Gorilla" ladder. It appears that Defendant Tricam is in the business of designing, manufacturing, and distributing ladders sold under the brand name "Gorilla Ladders." *See* Compl., ECF No. 1 at 9. None of the parties have taken issue with the different ways that the ladder has been identified. For ease of identification, the Court will refer to the ladder as a "Tricam" ladder.

## I.    BACKGROUND

### A.  Factual Background[2]

Plaintiff is a contractor with experience in carpentry and construction.  Pl.'s L.R. 56(a)2 St. ¶ 1.  On May 5, 2021, he purchased a Tricam model GLX-5B ladder from a Home Depot store because the ladder was on sale and its height level and weight limit matched his preferences.  *Id.* ¶¶ 3, 5.  The ladder is a type 1A, 300-pound rated stepladder designed to support up to 1,200 pounds, with two steps and two platforms.[3]  *Id.* ¶ 15.  The ladder's rails are made of extruded aluminum with elastomer feet.  *Id.* ¶ 18.  The rails extend above the top platform and have a guardrail approximately eighteen inches above the platform.  *Id.* ¶ 16.  The lower platform configures itself with the ladder's spreader bar mechanism, automatically placing the platform flat when the ladder is opened.  *Id.* ¶ 17.

Plaintiff read all the labels on the ladder and did not find the instructions or warnings to be confusing or problematic.  *Id.* ¶ 7.  Prior to the accident, Plaintiff used the ladder on five occasions and stepped up and down the ladder between twenty to twenty-five times without incident.  *Id.* ¶ 8.  Plaintiff weighed 242 pounds at around the time of the accident.[4]  Cleaveland Dep. Tr., ECF No. 39-3 at 5.  On the day of the accident, Plaintiff inspected the ladder for defective rivets or bolts

---

[2] The factual background is taken primarily from Plaintiff's Local Rule 56(a)2 Statement, ECF No. 50 at 21–35 ("Pl.'s L.R. 56(a)2 St."), except the Court disregards and excludes any factual statements supported solely by Dr. Slocum's affidavit in support of Plaintiff's motion for summary judgment opposition, Second Slocum Aff., ECF No. 50 at 43–48, for the reasons described below.  The facts indicated in this ruling are undisputed, unless otherwise noted.

[3] The parties agree that the ladder has two steps and a platform, *see* Pl.'s L.R. 56(a)2 St. ¶ 15, although Defendants' expert report describes the ladder as having "two steps and *two* platforms," *see* Ver Halen Report, ECF No. 39-4 at 2.  The parties further agree that Plaintiff stepped up to the "third step" before the accident.  Pl.'s L.R. 56(a)2 St. ¶ 11.  As demonstrated by the photograph below and the experts' descriptions of the ladder, the ladder has two steps and two platforms.  Thus, it appears that the "third step" refers to the lower platform, which is labeled in the photograph from Plaintiff's expert's report as "Bottom Step."  Because the labeling convention discrepancy is immaterial to resolution of the present motions, the Court does not address it further.

[4] In the transcript of Plaintiff's deposition, Plaintiff appears to refer to his weight at the time of the accident in August of 2021, despite that defense counsel's question to Plaintiff referenced a date of August of 2016.  *See* ECF No. 39-3 at 5.  The Court assumes the reference to August of 2016 is an error, since the relevant events in this case all occurred in 2021.

and did not observe any visible defects before he climbed it to repair the aluminum siding of his house.  ECF No. 1 at 10; Pl.'s L.R. 56(a)2 St. ¶¶ 9–10.  He set the ladder on a concrete slab and angled the ladder towards the house.  Pl.'s L.R. 56(a)2 St. ¶ 11.  He then climbed up to the third step/lower platform of the ladder.  *Id.*  As he reached to his left to start hammering nails, he felt something under him, and fell off the ladder.  *Id.* ¶ 12.  During the fall, the ladder struck Plaintiff's house, made a loud noise, and fell onto nearby grass.  *Id.* ¶ 13.

Following the accident, the ladder was observed to exhibit wear and tear and mud residue. *Id.* ¶ 21.  Additionally, the bottom horizontal brace between the ladder's rear rails was bent on its right side towards the front rail.  *Id.* ¶ 20.  Defendants contend that the rear-left rail "buckled at the level of the attachment of the spreader bar and first platform," which Plaintiff denies.  *Id.* ¶ 19. Based on Plaintiff's description of the buckling on the accident ladder, however, it appears that Defendants and Plaintiff are describing the same thing.  *See* Pl.'s Add'l Facts St., ECF No. 50 at 32 ¶¶ 7–8 (stating "[t]he subject ladder has a rear-left rail that has buckled inwards towards the front rails" and "[t]he buckling . . . is localized to the pin joint for the spreader link").  To illustrate the point, the Court has included a photograph of the ladder taken after the accident, which appears in Plaintiff's expert's report.  *See* April 6, 2022, Slocum Report ("Slocum Initial Report"), ECF No. 38-4 at 2.



**Figure 1** - Incident 5.5ft. Gorilla Ladder that collapsed under Mr. Cleaveland causing him to fall and be injured.

B.  Procedural Background

Defendants timely removed this action, originally filed in Connecticut Superior Court, on the basis of diversity jurisdiction.  *See* Not. of Removal, ECF No. 1 at 1–5.  In the complaint, Plaintiff alleges that the ladder was defective and unreasonably dangerous in several ways.  First, Plaintiff alleges that the ladder was defectively designed in that the height-to-wall thickness ratio of the rails were too thin, which made them prone to buckling.  *Id.* at 10, 14.  Plaintiff also alleges that the ladder was defectively designed and/or manufactured because the hole created to hold the pin joint on the rear-left rail connected to the ladder's spreader bar mechanism should have been reinforced, and because the rear-left rail pin joint hole was deformed inwards.  *Id.* at 10, 14.  Next, Plaintiff contends that Defendants failed to warn Plaintiff, negligently failed to properly and adequately test the ladder prior to its manufacture and sale, and breached the express warranty that the ladder was safe and effective for its intended uses and the implied warranty of merchantability

that the ladder was fit for its intended purpose.  *Id.* at 11–12, 15–16.  Further, Plaintiff alleges that Defendants' conduct constituted reckless disregard for the safety of product users and consumers. *Id.* at 13, 17.  Lastly, Plaintiff claims that as a result of Defendants' conduct, he suffered severe and painful injuries that may be permanent, has incurred medical expenses and will likely incur additional expenses in the future, has lost income and earning capacity, and has suffered loss of enjoyment of life.  *Id.* at 12, 16.  He brings claims pursuant to the CPLA and seeks money damages, punitive damages, and attorneys' fees and costs.  *Id.* at 10, 14, 17.

As described further below, Plaintiff belatedly disclosed a supplemental report prepared by his expert, Dr. Slocum.  During discovery, Plaintiff disclosed the Slocum Initial Report dated April 6, 2022, on February 22, 2024—a week after the Scheduling Order's deadline for doing so—and Defendants disclosed their initial expert report by Jon Ver Halen on June 14, 2024.  *See* Joint Status Report, ECF No. 37 at 2; Order, ECF No. 49.  Plaintiff deposed Mr. Ver Halen on July 22, 2024. ECF No. 49.  The deadline for all expert disclosures was August 15, 2024, and the discovery period closed on October 7, 2024.  *Id.*  On November 7, 2024, the day that Defendants filed their motion for summary judgment and a motion to exclude Dr. Slocum's testimony, Plaintiff received and then disclosed Dr. Slocum's supplemental expert report ("Slocum Supplemental Report").  *Id.*  The same day, Plaintiff moved for permission to file the Slocum Supplemental Report, *see* ECF No. 40, even though it was nearly three months after the close of expert discovery and one month after the close of all discovery.  The Court suspended Plaintiff's deadline to respond to Defendants' motion for summary judgment pending resolution of, primarily, Plaintiff's motion for permission to file the Slocum Supplemental Report.  Order, ECF No. 43.

On December 26, 2024, the Court denied Plaintiff's motion for permission to file the Slocum Supplemental Report, concluding that Plaintiff did not timely disclose it and had not

demonstrated that his failure to timely disclose it was substantially justified or harmless. *See* ECF No. 49. The Court directed Plaintiff to respond to Defendants' motion for summary judgment by January 16, 2025. *Id.* As explained further below, Plaintiff submitted, in opposition to Defendants' summary judgment motion, an affidavit from Dr. Slocum largely matching the conclusions he attempted to put forward in the untimely Slocum Supplemental Report. *See* ECF No. 50 at 44–48.

C. Dr. Slocum's Expert Opinions

The Slocum Initial Report is dated April 6, 2022. *See* ECF No. 38-4 at 1. Dr. Slocum is a mechanical engineer who earned his bachelor's degree in 2014, master's degree in 2015, and doctorate in 2018 in mechanical engineering from the Massachusetts Institute of Technology ("MIT"). *Id.* He worked at Materials and Engineering Group LLC from 2017 to 2022 as a senior consultant, where he provided forensic and design consulting and failure analysis. *Id.* at 8. Since 2020, his company LTAG Systems, LLC has been developing technology and devices for the United States Department of Defense. *Id.* at 1. Dr. Slocum also founded his expert witness consulting business, Slocum Consulting Group, LLC, in January of 2022. *Id.* at 8. He has published peer-reviewed papers that analyze mechanical structures and has nineteen patents on mechanical designs and aluminum technology. *Id.* at 9–11.

In his Initial Report, Dr. Slocum noted that he had utilized a scientific method outlined in "NFPA 921-2017, Chapter 4," which, according to Defendants' expert, is the National Fire Protection Association's Guide for Fire and Explosion Investigations. ECF No. 39-4 at 3. Dr. Slocum does not contest that his method comes from this Guide. *See* First Slocum Aff., ECF No. 45 at 18. Dr. Slocum performed a visual inspection of the accident ladder and a new Tricam model GLX-5B ladder from Home Depot that he purchased as an exemplar ladder. ECF No. 38-4 at 1. He observed that the accident ladder "has a rear-left rail that has buckled inwards towards the front

6

rails.  The buckling of the rear-left rail is localized to the pin joint for the spreader link.  The smooth wavy shape of the bent metal around the pin joint is indicative of plate buckling of the thin-walled aluminum extrusion that forms the rail." *Id.* at 2.  On the exemplar ladder, he also observed that the "rear rail extrusion is deformed locally around the spreader-link pin-joint." *Id.* at 1.  Dr. Slocum calculated the "height/wall thickness ratio" of the area where the accident ladder had buckled, and found that it was 40:1. *Id.* at 3.

Based on these observations and the ratio calculation, Dr. Slocum concluded that the accident ladder was defectively manufactured and designed. *Id.* at 3–5.  First, he concluded that "the design is inherently prone to failure" because "[w]hen a user's weight is on either of the top two steps of the [Tricam] ladder, the spreader link and bottom step will apply a side load to the front and rear rails." *Id.* at 3–4.  He also found that the "rear-left rail extrusion that the spreader-link pin-joint passes through is deformed inwards relative to the rest of the extrusion face, which is likely a result of manufacturing or assembly." *Id.* at 3.  Further, he determined that the combination of the defective design and manufacturing defect "all contributed to premature buckling of the [ladder] below its rated load limit and resulted in Mr. Cleaveland's accident." *Id.* at 5.  Dr. Slocum recommended reinforcement of the "pin-joint area of the linkage connection to the rails . . . to prevent local plate buckling of [Tricam's] advertised new design.  Additional reinforcement of this joint would likely have prevented this accident from occurring." *Id.* Defendants did not depose Dr. Slocum.

In response to Mr. Ver Halen's expert report and deposition, Plaintiff submitted the Slocum Supplemental Report on November 7, 2024.  Because the Court has already excluded the report, *see* ECF No. 49, the Court will not summarize it here.

Dr. Slocum also submitted two additional affidavits in support of Plaintiff's responses to Defendants' motions. First, in connection with Plaintiff's opposition to Defendants' motion to exclude, Dr. Slocum submitted an affidavit dated November 27, 2024 ("First Slocum Affidavit"), in which he defended his qualification to offer expert testimony on the ladder issues in this action and the scientific reliability of his Initial Report. *See* ECF No. 45 at 15–20.

Second, in connection with Plaintiff's opposition to Defendants' motion for summary judgment, Dr. Slocum submitted an affidavit dated January 16, 2025 ("Second Slocum Affidavit"), that recited his findings from both his Initial and Supplemental Reports. *See* ECF No. 50 at 44–48. The Second Slocum Affidavit contained new conclusions Plaintiff had not previously disclosed, even in the Slocum Supplemental Report. For instance, for the first time in the Second Slocum Affidavit, Dr. Slocum expressly stated that a reasonable alternative design existed, that the design of the Tricam ladder was manifestly unreasonable, and that he reviewed the design drawings of the Tricam model GLX-5B ladder. *Id.* at 47. Dr. Slocum also determined, for the first time in that Affidavit, that the accident ladder does not meet American National Standards Institute ("ANSI") or Occupational Safety and Health Administration ("OSHA") requirements, that it would not have passed inspection, and that there is "no plausible reason to believe that the ladder failed in any other way than as described by Cleaveland." *Id.*

## II.    DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY

The Court begins with Defendants' motion to exclude testimony of Dr. Slocum. For the reasons described below, the Court grants Defendants' motion.

### A.  Legal Standard

Federal Rule of Evidence 702 provides that a qualified expert "may testify in the form of an opinion" if the proponent of the expert demonstrates to the court that "(a) the expert's scientific,

technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."  Fed. R. Evid. 702.  A party must establish by a preponderance of the evidence that their proffered expert testimony is admissible under the requirements of Rule 702.  *See United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 n.10 (1993)); *see also* Fed. R. Evid. 702, advisory committee's note to 2023 amendment.

The district court performs a "gatekeeping" function in deciding whether the expert's testimony is admissible under Rule 702, *see Daubert*, 509 U.S. at 597, which operates within the "liberal standard of admissibility" embodied by Rule 702.  *See Nimely v. City of New York*, 414 F.3d 381, 395–96 (2d Cir. 2005).  In performing this function, and in addition to determining that an expert witness is qualified and reliable, the Court must determine that the expert's testimony will "assist the trier of fact," *see id.* at 397, by helping "the jury in comprehending and deciding issues beyond the understanding of a layperson."  *DiBella v. Hopkins*, 403 F.3d 102, 121 (2d Cir. 2005).

B.  Discussion

Defendants move to exclude Dr. Slocum's expert testimony on the grounds that Dr. Slocum is not qualified to opine on ladder defects and design and causation, and his expert testimony is unreliable and speculative.  For the reasons that follow, the Court grants Defendants' motion to exclude Dr. Slocum's expert testimony.

### 1. Initial Matters

The Court first addresses whether Plaintiff may rely on the First Slocum Affidavit to respond to Defendants' motion to exclude. Rule 26(a)(2) "requires disclosure of an expert's qualifications," but it "does not require that the disclosures address the reliability of the principles and methods used or the reliability of the manner in which those principles and methods were applied in the case." *Advanced Analytics, Inc. v. Citigroup Glob. Mkts., Inc.*, 301 F.R.D. 31, 43 (S.D.N.Y. 2014); *see also* Fed. R. Civ. P. 26(a)(2)(B)(iv) (providing that an expert's report must contain "the witness's qualifications, including a list of all publications authored in the previous 10 years"). For that reason, "[w]hen a *Daubert* motion invokes concerns about the reliability and application of the expert's methodology, declarations that are responsive to such concerns are generally seen as supplying a permissible form of support." *Alan L. Frank L. Assocs., P.C. v. OOO RM Invest*, No. 17-CV-1338 (NGG) (ARL), 2021 WL 1906468, at *3 (E.D.N.Y. May 12, 2021). Thus, the Court concludes that Plaintiff may offer the First Slocum Affidavit to defend the principles and methodology used by Dr. Slocum in his initial report. *See Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, No. 14-CV-10104 (VEC), 2019 WL 5957221, at *3 (S.D.N.Y. Nov. 13, 2019) (finding supplemental expert declaration on a *Daubert* motion appropriate because it "merely defends [the expert's] methodology"); *Better Holdco, Inc. v. Beeline Loans, Inc.*, 666 F. Supp. 3d 328, 359–60 (S.D.N.Y. 2023) (same).

To the extent that Plaintiff seeks to use the First Slocum Affidavit to elaborate upon Dr. Slocum's qualifications to render an expert opinion in this matter, however, the disclosure is untimely, because Dr. Slocum was explicitly required to disclose relevant qualifications in his initial report pursuant to Rule 26(a)(2)(B)(iv). Accordingly, the Court excludes the following portions of the First Slocum Affidavit: Paragraphs 3 and 4, which seek to supplement Dr. Slocum's

qualifications beyond those that were originally disclosed to Defendants (including, among other alleged qualifications, that he grew up on a farm, assisted with building structures on the farm, and used ladders on many occasions while working on the farm); the second paragraph numbered 5,[5] which does the same; and the portion of Paragraph 9 that refers to the Slocum Supplemental Report, since that Report has already been excluded by the Court. *See* ECF No. 45 at 15–17.

### 2. Dr. Slocum's Qualifications

Whether a witness is "qualified as an expert by knowledge, skill, experience, training, or education" is a "threshold question" that the district court must resolve before analyzing the admissibility of the witness's opinions. *Nimely*, 414 F.3d at 396 n.11 (quoting Fed. R. Evid. 702). "A court must consider the totality of a witness's background when evaluating the witness's qualifications to testify as an expert." *Kuzmech v. Werner Ladder Co.*, No. 3:10-cv-266 (VLB), 2012 WL 6093898, at *7 (D. Conn. Dec. 7, 2012). Just "because a witness qualifies as an expert with respect to certain matters or areas of knowledge, it by no means follows that he or she is qualified to express expert opinions as to other fields." *Nimely*, 414 F.3d at 399 n.13. Nonetheless, this inquiry falls within the broad discretion of the district court, "which need not preclude an expert from testifying merely because he or she does not possess experience tailored to the precise product or process that is the subject matter of the dispute." *Sola v. Home Depot U.S.A., Inc.*, No. 06-CV-6324 (ERK), 2008 WL 11436769, at *2 (E.D.N.Y. Dec. 23, 2008).

Plaintiff has demonstrated by a preponderance of the evidence that Dr. Slocum is qualified to render an expert opinion relating to the ladder's alleged manufacturing and design defects. Dr. Slocum has a bachelor's degree, master's degree, and doctorate in mechanical engineering from

---

[5] The Court notes that the paragraphs in the First Slocum Affidavit are numbered incorrectly. After Paragraph 5, the paragraph numbering starts over from the number "3." For clarity's sake, the Court is excluding the second Paragraph 5 of the Affidavit.

MIT.  Pl.'s *Daubert* Opp'n Br., ECF No. 45 at 8–9.  He has also published peer-reviewed papers that analyzed mechanical structures and holds patents on mechanical designs and aluminum technology.  ECF No. 38-4 at 9–11.

The Court rejects Defendants' argument that Dr. Slocum is unqualified to render an opinion in this case because he has never provided testimony specific to ladder design or accidents, has never designed a ladder or worked in the ladder industry, has no experience researching or addressing the causes of ladder accidents, and has never participated in any relevant committees that address ladder safety issues.  Defs.' *Daubert* Opening Br., ECF No. 38-1 at 9.  "Rule 702 does not require expertise to be so exacting." *Kuzmech*, 2012 WL 6093898, at \*7.  While it is true that Dr. Slocum's *curriculum vitae* indicates that he has little to no experience specific to ladder design and ladder accidents, his extensive education and professional background in mechanical engineering and metallurgy demonstrate that he is qualified to opine on whether the aluminum ladder in this case was defectively designed and manufactured.  *See, e.g.*, *id.* (holding that a metallurgical engineer lacking specific experience in the ladder industry is qualified to testify on ladder issues due to his background in metallurgy and engineering); *Sola*, 2008 WL 11436769, at \*2–3 (same regarding expert who was a mechanical engineer with general manufacturing experience).

The Court therefore concludes that Dr. Slocum is qualified to provide an expert opinion on the issue of whether the ladder at issue here contained defects that caused Plaintiff's fall and injuries.

### 3.  *Reliability of Dr. Slocum's Testimony*

But qualifications are not the end of the inquiry.  Even if an expert is qualified, the expert's testimony must be reliable "at every step" in order to be admissible.  *Amorgianos v. Nat'l R.R.*

*Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002). To make this determination, "the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Id.* Indeed, it is not only appropriate for a district court to take a "hard look" at experts' reports," but in fact required, in order "to ensure reliability." *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 982 F.3d 113, 123 (2d Cir. 2020).

As an initial matter, the Court notes that Plaintiff relies in part on the Slocum Supplemental Report in order to respond to Defendants' attack on the reliability of Dr. Slocum's expert testimony. Given that the Court has since denied Plaintiff permission to file this supplemental report due to untimely disclosure, *see* ECF No. 49, the Court declines to consider any of Plaintiff's arguments that cite to the supplemental report for support.

Looking solely at the Slocum Initial Report and the portions of the First Slocum Affidavit that address the principles and methodology in the Initial Report, the Court finds Dr. Slocum's expert opinions must be excluded under Rule 702.

First, Plaintiff has failed to show that a simple visual inspection is a reliable methodology from which to draw conclusions about whether the ladder suffered from a manufacturing or design defect. While Dr. Slocum himself claims, without proof, that his methodology is generally accepted in the "scientific community," ECF No. 45 at 19, there is no evidence or argument whatsoever that his method is generally accepted in the "relevant engineering community." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999); *see also id.* at 157 ("Of course, [the expert] himself claimed that his method was accurate, but, as [the Supreme Court] pointed out in *Joiner*, 'nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.'" (quoting

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997))). As Plaintiff has not put forth any evidence or argument that visual inspection alone is a reliable methodology for assessing the causes of ladder accidents, the Court cannot conclude Dr. Slocum's methodology is reliable.

But even assuming Dr. Slocum's method were reliable, there is "too great of an analytical gap" between his data "and the opinion proffered." *Amorgianos*, 303 F.3d at 266 (quoting *Joiner*, 522 U.S. at 146). Based on a visual examination of the accident ladder and the exemplar ladder and calculating the height/wall thickness ratio of the accident ladder's rear rail, Dr. Slocum found "evidence of buckling at the pin joint" and "deformation of the aluminum tubing," which he concluded to be a manufacturing defect that contributed to Plaintiff's accident. *See* ECF No. 45 at 10; ECF No. 38-4 at 1–5. But Dr. Slocum fails to provide any data to support his conclusion that "[i]t is more likely than not the pre-deformed state of the extrusion . . . contributed to the premature buckling of the ladder." ECF No. 38-4 at 4. There is neither explanation, nor any form of testing, to demonstrate why the deformity at the "rear-left rail extrusion that the spreader-link pin-joint passes through" can be problematic. *Id.* at 3. Nor does Dr. Slocum attempt to illustrate the point at which such a deformity would constitute a defect. In short, Dr. Slocum's opinion on the accident ladder's alleged manufacturing defect is "impermissibly based on his *ipse dixit* alone." *See Tramontane v. Home Depot U.S.A., Inc.*, No. 15-CV-8528 (NSR), 2018 WL 4572254, at *6 (S.D.N.Y. Sept. 24, 2018) (excluding the plaintiff's expert's opinion because the expert concluded that the porosity of certain hooks on a ladder led to the plaintiff's injuries, without demonstrating how porosity is problematic or the level of porosity needed to constitute a manufacturing defect).

Additionally, Dr. Slocum concluded that the ladder was defective in design because he found that a "side load" is applied to the ladder's front and rear rails when a user's weight is on one of the top two steps of the ladder, leading to deformation of the ladder's rails and spreader

links.  ECF No. 38-4 at 3–4.  Once again, Dr. Slocum fails to provide any data to support this conclusion.  He did not perform any tests to determine whether Plaintiff's position on the top step of the ladder would lead to the buckling observed on the accident ladder or to prove that the spreader link of the ladder applied both an "eccentric load" and "torsion to the tube, which would add to the overall stress it experiences when loaded." *Id.* at 4.  He does not explain how much torsion or eccentric load is acceptable.  And despite observing that "[r]egular step ladders do not have this significant side load on the rails [because] the steps are usually fixed to the front rails and independent of the spreader links," Dr. Slocum provides no data to demonstrate this comparison. *Id.*

Nor did Dr. Slocum perform any testing or provide any data in support of his conclusion that the area of the ladder where the buckling occurred "should have been reinforced before the rivet was inserted and assembled." *Id.*  His conclusion that "[a]dditional reinforcement of this joint would likely have prevented this accident from occurring," *id.* at 5, is merely speculative. *See Russo v. Keough's Turn of the River Hardware, LLC*, No. 11 CV 994 (VB), 2012 WL 4466626, at *4 (S.D.N.Y. Sept. 25, 2012) (excluding expert testimony that the thickness of a metal ladder rail was a manufacturing defect as unsupported and "speculative at best").  Dr. Slocum likewise did not undertake any testing to confirm his theory of causation, through which he hypothesized that the buckling happened because Plaintiff was "standing on the top step and reaching to his left which resulted in a higher load on the rear left rail than the rear right rail."  ECF No. 38-4 at 4.

Accordingly, the Court agrees with Defendants that Dr. Slocum's expert testimony in the Slocum Initial Report lacks sufficient basis in facts and data, and is therefore inadmissible under Rule 702.  Defendants' motion to exclude Dr. Slocum's expert opinion is granted.

## III.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Having found that the testimony of Plaintiff's expert should be excluded, the Court next addresses Defendants' motion for summary judgment.  For the reasons that follow, the Court grants Defendants' motion for summary judgment.

### A.  Legal Standard

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A disputed fact is material only where the determination of the fact might affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  With respect to genuineness, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing there is no genuine issue of material fact in dispute will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-moving party's claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears an initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  A movant, however, "need not prove a negative when it moves for summary judgment on an issue that the [non-movant] must prove at trial.  It need only point to an absence of proof on [the non-movant's] part, and, at that point, [the non-movant] must 'designate specific facts showing that there is a genuine issue for trial.'"  *Parker v.*

*Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 324).

The non-moving party, in order to defeat summary judgment, must come forward with evidence

that would be sufficient to support a jury verdict in his or her favor.  *Anderson*, 477 U.S. at 249.

If the non-movant fails "to make a sufficient showing on an essential element of [their] case with

respect to which [they have] the burden of proof," then the movant will be entitled to judgment as

a matter of law.  *Celotex Corp.*, 477 U.S. at 323.

In considering a motion for summary judgment, a court "must construe the facts in the light

most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable

inferences against the movant."  *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation

and internal quotation marks omitted).  "Only when reasonable minds could not differ as to the

import of the evidence is summary judgment proper."  *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d

Cir. 1991) (citing *Anderson*, 477 U.S. at 250–51).

B. <u>Discussion</u>

The Court grants Defendants' motion for summary judgment in full.

*1. Initial Matters*

To begin, Plaintiff has conceded that summary judgment is appropriate on his claims for

punitive damages, product defect on the basis of the malfunction theory, failure to warn, and

express warranty, by failing to respond to Defendants' arguments on these issues.  *See* Defs.' Mot.

Summ. J. Opening Br., ECF No. 39-1; Pl.'s Mot. Summ. J. Opp'n Br., ECF No. 50 at 1–20.  "It is

well-established that a plaintiff effectively concedes a defendant's arguments by his failure to

respond to them."  *Nance v. N.Y. Pub. Interest Rsch. Grp. Fund, Inc.*, No. 1:23-cv-3030 (MKV),

2025 WL 965883, at *6 (S.D.N.Y. Mar. 31, 2025) (citing cases); *Simons v. Yale Univ.*, 712 F. Supp.

3d 267, 277 (D. Conn. 2024) (same). Defendants are therefore entitled to summary judgment as to these theories of products liability advanced in Plaintiff's complaint.

Before addressing the parties' arguments relating to the remaining theories of manufacturing defect, design defect, and the implied warranty of merchantability, the Court notes two issues with Plaintiff's opposition briefing. First, Plaintiff is plainly incorrect that Defendants' motion for summary judgment is untimely. Under Federal Rule of Civil Procedure 56(b), a party may file a motion for summary judgment at any time until thirty days after the close of all discovery, "[u]nless a different time is set by local rule or the court orders otherwise." Given that the Court's Scheduling Order set a November 7, 2024, deadline for summary judgment motions and that Defendants filed their summary judgment motion on that day, there is no evidence that the motion is late. *See* Scheduling Order, ECF No. 21.

Second, Plaintiff has attempted an impermissible end-run around the Court's order precluding the Slocum Supplemental Report, by submitting the Second Slocum Affidavit. Portions of Plaintiff's Local Rule 56(a)2 Statement are supported by the Second Slocum Affidavit, which incorporates much of the Slocum Supplemental Report that the Court had explicitly excluded (well before Plaintiff's deadline to respond to Defendants' motion for summary judgment). *See* ECF No. 49. *Compare* ECF No. 50 at 46 ¶¶ 17–20 (Second Slocum Affidavit rebutting Mr. Ver Halen's expert report) *with* Slocum Suppl. Report, ECF No. 45 at 35–44. And, incredibly, the Second Slocum Affidavit includes statements outside the scope of *both* the Initial and Supplemental Reports. For instance, the Second Slocum Affidavit contains new opinions regarding construction of the GLX-5B ladder, its alleged manifestly unreasonable design, a reasonable alternative design, Dr. Slocum's review of the model GLX-5B design drawings, and the accident ladder's failure to

meet ANSI and OSHA requirements.  ECF No. 50 at 44, 47.  The remainder of the Second Slocum Affidavit repeats the analysis and findings in the Slocum Initial Report, often verbatim.

Plaintiff appears to contend that the Court should still consider Second Slocum Affidavit because it is being offered to rebut Defendants' motion for summary judgment.  In essence, this argument is that, because the Second Slocum Affidavit is provided pursuant to Federal Rule of Civil Procedure 56 in opposition to a motion for summary judgment, it is somehow immune to the disclosure requirements of Rule 26(a).  But the express language of the Federal Rules of Civil Procedure forecloses this argument.  Specifically, Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or harmless."  Rule 26(a)(2), in turn, governs expert disclosures.  Thus, it is clear that, where expert witnesses and opinions are not properly disclosed, they may not be submitted in support of, or opposition to, a motion for summary judgment, unless the failure to disclose was substantially justified or harmless.  Courts in the Second Circuit regularly prohibit reliance on an expert affidavit in opposition to a motion for summary judgment where the expert or their report was not timely disclosed.  *See State Farm Fire & Cas. Co. v. Omega Flex, Inc.*, No. 3:20-CV-00648 (SVN), 2023 WL 2666676, at *7 (D. Conn. Mar. 28, 2023) (citing cases).

The Court has already determined that Plaintiff's failure to disclose the Slocum Supplemental Report was neither substantially justified nor harmless.  *See* ECF No. 49.  It follows that Plaintiff's failure to disclose those portions of the Second Slocum Affidavit that parrot the Slocum Supplemental Report are excluded as well.  And the same is true of the new opinions disclosed in the Second Slocum Affidavit, as to which, again, there is no showing that the failure to timely disclose the opinions was substantially justified or harmless.

For these reasons, the Court will not consider the Second Slocum Affidavit in resolving Defendants' motion for summary judgment.

### 2.  Manufacturing and Design Defect Theories

In Connecticut, products liability claims, "whether alleging a design defect, manufacturing defect or failure to warn defect, are governed" by the following five elements: "(1) the defendant was engaged in the business of selling the product; (2) the product was in a defective condition unreasonably dangerous to the consumer or user; (3) the defect caused the injury for which compensation was sought; (4) the defect existed at the time of the sale; and (5) the product was expected to and did reach the consumer without substantial change in condition." *Bifolck v. Philip Morris, Inc.*, 324 Conn. 402, 434 (2016) (citations omitted).  Importantly, "[t]he fact of a product accident does not necessarily establish either the existence of a defect or that the manufacturer is responsible, both of which must be proven in product liability cases." *Metro. Prop. & Cas. Ins. Co. v. Deere & Co.*, 302 Conn. 123, 136 (2011) (citing secondary sources and cases).

### a.  Manufacturing Defect

First, the Court concludes Defendants are entitled to summary judgment on Plaintiff's manufacturing defect theories.

"A manufacturing defect is a flaw in the manufacturing process which causes the product to deviate from the design standards and intended specifications." *McConologue v. Smith & Nephew, Inc.*, 8 F. Supp. 3d 93, 109 (D. Conn. 2014) (citing *Miller v. United Techs. Corp.*, 233 Conn. 732, 779 (1995)).  Plaintiff has provided no admissible evidence to create a genuine dispute of material fact over whether the accident ladder suffered from a manufacturing defect.  Indeed, Plaintiff proffers no evidence of manufacturing defect aside from the opinions of Dr. Slocum, which have been excluded.  Even if they were considered, however, there is no indication from the

Slocum Initial Report that Dr. Slocum reviewed the GLX-5B ladder design drawings, that he analyzed whether the accident ladder deviated from those drawings, or that he made such a determination. Only in the Second Slocum Affidavit does Dr. Slocum belatedly claim that he reviewed the design drawings, *see* ECF No. 50 at 47 ¶ 27, but even there he fails to analyze whether or conclude that the accident ladder differed from its intended specifications.

As a result, summary judgment in favor of Defendants is proper with respect to Plaintiff's manufacturing defect theory.

b.   Design Defect

Likewise, Defendants are entitled to summary judgment on Plaintiff's design defect theories.

"A design defect exists when the product is otherwise properly manufactured, but is nonetheless unreasonably dangerous because its attributes can cause unexpected injury." *Kuzmech*, 2012 WL 6093898, at *10. A design defect may be proven under the risk-utility test or the consumer expectations test. *Bifolck*, 324 Conn. at 434. The risk-utility test, also known as the "modified consumer expectation test," is the "primary" test, while the "ordinary" consumer expectations test is "reserved for cases in which the product failed to meet the ordinary consumer's *minimum* safety expectations, such as *res ipsa* type cases." *Izzarelli v. Reynolds Tobacco Co.*, 321 Conn. 172, 194 (2016). Plaintiff has failed to demonstrate a genuine issue of material fact under either test.

First, Defendants are entitled to summary judgment as to Plaintiff's design defect theory under the risk-utility test. Under the risk-utility test, a product is in a defective condition unreasonably dangerous to the consumer if: "(1) [a] reasonable alternative design was available that would have avoided or reduced the risk of harm and the absence of that alternative design

renders the product unreasonably dangerous"; or "(2) [t]he product is a manifestly unreasonable design in that the risk of harm so clearly exceeds the product's utility that a reasonable consumer, informed of those risks and utility, would not purchase the product." *Bifolck*, 324 Conn. at 434–35.

To start, Plaintiff has not put forth any timely expert testimony regarding a reasonable alternative design. Although "a jury may, under appropriate circumstances, infer a defect from the evidence without the necessity of expert testimony," *Potter v. Chicago Pneumatic Tool Co.*, 241 Conn. 199, 218 (1997), expert testimony is required when technical issues—"issues beyond common knowledge and experience"—are involved. *Fajardo v. Boston Sci. Corp.*, 341 Conn. 535, 565–66 (2021) ("Technical issues requiring expert testimony include engineering, metallurgical and medical principles."). Under the risk-utility test, "expert testimony is required in a reasonable alternative design case when the design regarding the defect and whether the alternative was feasible (technically and economically) and whether the alternative would have reduced or avoided the risk of harm is beyond the ken of the average juror." *Id.* at 566–67 (citing *LePage v. Horne*, 262 Conn. 116, 125 (2002)). Here, evidence on a reasonable alternative design for the ladder would involve engineering principles unfamiliar to a lay juror. Plaintiff has not timely submitted the expert testimony required on the issue of reasonable alternative design. *See* ECF No. 50 at 14–15. Without expert testimony, Plaintiff is unable to demonstrate that there is a genuine issue of material fact on the issue of reasonable alternative design.

Even if the Slocum Initial Report and the Second Slocum Affidavit were considered here, though, the Court would come to the same conclusion. "In considering whether there is a reasonable alternative design, the jury must consider the feasibility of the alternative." *Bifolck*, 324 Conn. at 435. In his initial report, Dr. Slocum determined that reinforcement of the spreader

link pin joint would have prevented the buckling in the accident ladder, *see* ECF No. 38-4 at 5, but only belatedly identified this recommendation as an "alternative design" in the Second Slocum Affidavit, *see* ECF No. 50 at 47 ¶ 24.  And aside from a conclusory statement in that Affidavit that "a reasonable alternative design was available that would have avoided or reduced the risk of harm and the failure to use that alternative design rendered the ladder unreasonably dangerous," Dr. Slocum provides zero expert analysis or data supporting this conclusion.  *Id.* ¶ 26.  There is no indication that he tested any reasonable alternative design to ascertain its technical and economical feasibility or collected any data on such a design's ability to prevent the accident.

Second, there is insufficient evidence in the record to conclude that a jury must decide whether the ladder had a manifestly unreasonable design because "the ladder created side loads on the rails that could result in buckling well below its rated weight limit unlike other step ladders." ECF No. 50 at 15.  To support this theory, Plaintiff cites to the Slocum Initial Report, as well as to the Second Slocum Affidavit, to refute Defendants' assertion that the ladder was designed to support 1,200 pounds and that it passed third-party ANSI tests.  *See id.* at 15–16 (citing Pl.'s Add'l Facts St. ¶¶ 17, 20, 24–26 (citing ECF No. 50 at 46 ¶¶ 18–20, 23, 25)).  Notably, Plaintiff relies on statements from the Second Slocum Affidavit that were pulled from the Slocum Supplemental Report, which the Court excluded well before Plaintiff's deadline to oppose Defendants' motion for summary judgment.  *Compare* ECF No. 50 at 46 ¶¶ 17–20 (Second Slocum Affidavit rebutting Mr. Ver Halen's expert report) *with* ECF No. 45 at 35–44 (Slocum Supplemental Report rebutting Mr. Ver Halen's expert report).  As the Court has also excluded the Slocum Initial Report because it is not based on sufficient facts and data, and has excluded the Slocum Supplemental Report and Second Slocum Affidavit because they were not timely disclosed, Plaintiff has no evidence— expert or otherwise—supporting any of his arguments.  Plaintiff's bald representation that the

design was manifestly unreasonable does not make it so, without any evidence supporting that proposition.

Again, the Court would conclude the same even if it considered the Slocum Initial Report. To determine whether the ladder had a manifestly unreasonable design, the jury may consider the following factors: "the magnitude and probability of the risk of harm, the instructions and warnings accompanying the product, the utility of the product in relation to the range of consumer choices among products, and the nature and strength of consumer expectations regarding the product, including expectations arising from product portrayal and marketing." *Bifolck*, 324 Conn. at 435. Dr. Slocum fails to analyze any of these factors in his initial report. Further, despite Plaintiff's insistence that the ladder had a manifestly unreasonable design that created "dangerous side loads on the rails . . . that could result in buckling well below its rated weight limit," ECF No. 50 at 15–16, there is no indication that Dr. Slocum tested whether the exemplar ladder would buckle in the same way as the accident ladder in his initial report.[6]

Plaintiff acknowledges that the risk-utility test "will govern most cases," ECF No. 50 at 13, and offers no specific reasons why the consumer expectations test would apply here. Under the latter test, "a product is in a defective condition unreasonably dangerous to the consumer or user only if it is 'dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.'" *Bifolck*, 324 Conn. at 436 (quoting Restatement (Second) of Torts § 402A cmt. i (A.L.I. 1965)). As noted above, this test is "reserved for those limited cases in which a

---

[6] The Court acknowledges that Dr. Slocum does perform this testing later, which he disclosed in the Slocum Supplemental Report. But Plaintiff was on notice of that Report's exclusion from the record when he filed his opposition to Defendants' motion for summary judgment. *See* ECF No. 49 (December 26, 2024, order excluding Slocum Supplemental Report); ECF No. 50 (Plaintiff's opposition to Defendants' summary judgment motion, filed January 16, 2025).

product fails to meet a consumer's legitimate, commonly accepted minimum safety expectations," *Izzarelli*, 321 Conn. at 202–03, and would be appropriate when the accident is "so bizarre or unusual that the jury would not need expert testimony to conclude that the product failed to meet the consumer's expectations," *id.* at 191; *see also Ferrari v. Johnson & Johnson, Inc.*, 190 Conn. App. 152, 161 (2019) (quoting *id.*).

The Court is not convinced that the consumer expectations test applies here. Plaintiff has put forth no admissible evidence creating a genuine dispute about whether the ladder would fail to meet minimum safety expectations. To the contrary, as Defendants note, the undisputed admissible evidence demonstrates that the ladder complied with the relevant ANSI performance standards. *See* Ver Halen Engineering Test Report, ECF No. 39-9 at 2. Nor is this a case where the accident was so unusual that expert testimony is unnecessary to understand the product's failure. Indeed, Plaintiff's argument relies solely on the highly technical theory, advanced by his *expert*, that the ladder's design creates dangerous side loads that lead to buckling of the ladder's rails "when used in an intended or reasonably foreseeable manner," *Bifolck*, 324 Conn. at 436, and that, as a result, the ladder failed to meet an ordinary consumer's minimum safety expectations. *See* ECF No. 50 at 16–17. The alleged design flaw and causation questions involve "issues beyond common knowledge and experience," *Fajardo*, 341 Conn. at 566, that require expert testimony to understand. Given that Plaintiff's theory of defect relies heavily on the physical conditions and engineering principles relating to when a ladder buckles, a jury would not be able to draw the "correct conclusions" from the facts without expert testimony. *Kuzmech*, 2012 WL 6093898, at *12. Nor would the causal nexus between Plaintiff's injury and the purported defects of the

accident ladder be obvious to a lay juror.  *Id.*  For these reasons, this is not the unusual case where the consumer expectations test would apply.[7]

### 3.  *Implied Warranty of Merchantability*

Finally, Defendants are entitled to summary judgment on Plaintiff's claim for breach of the implied warranty of merchantability.

The implied warranty of merchantability "acts as a guarantee by the seller that his goods are fit for the ordinary purposes for which they are to be used and will pass in the trade without objections."  *Id.*; *see also* Connecticut Uniform Commercial Code, Conn. Gen. Stat. § 42a-2-314(2)(c) ("Goods to be merchantable must be at least . . . fit for the ordinary purposes for which such goods are used.").  In order to state a claim for breach of the implied warranty of merchantability, a plaintiff must allege that:  "(1) a merchant sold the goods; (2) the goods were defective and not merchantable at the time of sale; (3) injury occurred to the buyer or his property; (4) the injury was caused by the merchant's defective product; and (5) notice was given to the seller of the claimed breach."  *Leonard v. Gen. Motors L.L.C.*, 504 F. Supp. 3d 73, 99 (D. Conn. 2020).

Plaintiff once again cites exclusively to the Slocum Initial Report and the Second Slocum Affidavit to support his theory that the implied warranty was breached because the accident ladder buckled while holding a man who weighed less than the rated limit.  *See* ECF No. 50 at 18–19 (citing Pl.'s Add'l Facts St. ¶¶ 3, 15–17, 27–28 (citing Slocum Initial Report and Second Slocum Affidavit)).  As discussed above, Plaintiff has not offered any admissible expert evidence to

---

[7] Even if the test did apply and the Slocum Initial Report and the Second Slocum Affidavit were considered by the Court, though, there would not be a genuine question of material fact under the consumer expectations test.  Dr. Slocum has failed to substantiate his assertion that the accident ladder was defectively designed and prone to buckling, and that those purported defects would have led to the buckling of the accident ladder during normal use.  And Plaintiff has proffered no other, non-expert testimony that creates a genuine dispute of material fact under the consumer expectations test.

demonstrate that the ladder was defective, otherwise unreasonably dangerous, or unfit for its ordinary purpose.  In addition, Plaintiff fails to offer any admissible expert evidence that his injuries were caused by the ladder being unfit for its purpose.

Even if the Court were to consider the Slocum Initial Report and the Second Slocum Affidavit, Plaintiff would still be unable to create a genuine dispute of material fact that Defendants breached the implied warranty of merchantability.  Here, Plaintiff's breach of implied warranty claim turns on the accident ladder's defects.  Specifically, Dr. Slocum claims that the mere fact that the accident ladder failed while holding a person who weighed less than the rated limit shows that the accident ladder does not meet ANSI or OSHA standards.  *Id.* at 18; *id.* at 47 ¶ 28.  Once again, Dr. Slocum makes conclusory statements without showing his work.  And, as noted above, "[t]he fact of a product accident does not necessarily establish either the existence of a defect or that the manufacturer is responsible." *Metro. Prop. & Cas. Ins. Co.*, 302 Conn. at 136.  Given that Plaintiff's implied warranty claim is premised on the ladder's defects and that the Court has held above that Plaintiff has failed to create a genuine issue of material fact as to the ladder's defects, Plaintiff likewise cannot create a genuine issue of material fact as to his breach of implied warranty claim. *Kuzmech*, 2012 WL 6093898, at *13.  Defendants' motion for summary judgment as to the breach of implied warranty is therefore granted.

## IV.     CONCLUSION

For the reasons described herein, Defendants' motion to exclude the testimony of Dr. Slocum, ECF No. 38, and motion for summary judgment, ECF No. 39, are GRANTED.  The Clerk of Court is directed to enter judgment for Defendants Home Depot USA Inc. and Tricam Industries, Inc., and close this case.


**SO ORDERED** at Hartford, Connecticut, this 10th day of June, 2025.


          */s/ Sarala V. Nagala*

          SARALA V. NAGALA
          UNITED STATES DISTRICT JUDGE